UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:22-CV-00144-EBA

APRIL LYNN NOE,                                                                                    PLAINTIFF,

V.                          **MEMORANDUM OPINION & ORDER**

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,                                           DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

### INTRODUCTION

Plaintiff, April Lynn Noe, appeals the Acting Social Security Commissioner's denial of her application for disability insurance benefits. [R. 1]. Noe alleges that the Administrative Law Judge committed "harmful error" when assessing her residual functional capacity[1] by failing to consider Noe's potential work absenteeism. [R. 13 at pg. 1]. Noe and the Acting Commissioner filed briefs in support of their respective positions. [R. 13; R. 17]. So, this matter is ripe for review. The Court will affirm the Acting Commissioner's decision for the reasons below.

### FACTS AND PROCEDURAL HISTORY

April Noe is an experienced school bus driver and monitor. [R. 6-1 at pg. 59]. Unfortunately, she also suffers from the following severe impairments: osteoarthritis, anxiety disorder, PTSD, depression, bipolar disorder, migraines, degenerative disc disease of the cervical, thoracic, and lumbar spines, and degenerative joint disease of the knees. [*Id.* at pg. 18].

---

[1] Residual functional capacity "is the most an adult can do despite his or her limitation(s)." 84 Fed. Reg. 22,924, 22,925 (May 20, 2019).

On September 10, 2014, she ceased working. [*Id.* at pgs. 239, 252]. In January 2019, Noe filed a Title II application for disability insurance benefits. [*Id.* at pgs. 239–41]. Noe's date last insured was December 31, 2019, when she was 49 years old.[2] [*Id.* at 152]. To prevail, Noe needed to establish that she was disabled within the meaning of the Social Security Act between September 10, 2014 and December 31, 2019.

This application was Noe's second attempt to secure disability insurance benefits. Her first application was denied initially and on reconsideration. [*Id.* at pg. 133]. In her first application, Noe sought to establish that she was disabled within the meaning of the Social Security Act between September 10, 2014 and September 19, 2017.[3] However, she was unsuccessful.

Noe's second application, much like her first, was denied initially and on reconsideration. [*Id.* at pgs. 221, 226]. Thereafter, she requested a hearing before an Administrative Law Judge. After the hearing, Administrative Law Judge Jerry Lovitt found that Noe was not disabled within the meaning of Title II. [*Id.* at pgs. 206]. Noe requested review by the Social Security Administration's Appeals Council, [*Id.* at pg. 288], which remanded with two instructions to the Administrative Law Judge: (1) clarify the time period at issue; and (2) explain which findings made during the resolution of Noe's first application remain binding on the Social Security Administration. [*Id.* at 214–18]. On remand, the Administrative Law Judge conducted a second hearing and followed the Appeals Council's instructions when issuing its decision, ultimately

---

[2] "The date last insured . . . is the last day of the quarter a claimant[] meets insured status for disability or blindness. For title II Disability Insurance Benefit . . . claims, adjudicators cannot establish onset after the DLI." POMS DI 225501.320 *Date Last Insured (DLI and the Established Onset Date (EOD))*, *available at* https://secure.ssa.gov/poms.nsf/lnx/0425501320. Put another way, Noe must establish disability on or before December 31, 2019 to be entitled to a period of disability and disability insurance benefits.

[3] Because Noe's date last insured—December 31, 2019—had yet to occur, Noe needed only to demonstrate that she was disabled between the date of the start of her alleged disability and the date of the Administrative Law Judge's decision, rendered September 19, 2017. [R. 6-1 at pg. 133].

finding that Noe was not disabled within the meaning of the Social Security Act. [*Id.* at pgs. 22–62].

Noe once again requested review by the Appeals Council. But her request was denied. [*Id.* at pg. 1]. Because the Appeals Council declined review, the Administrative Law Judge's decision became the Acting Commissioner of Social Security's final decision, which is subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Now, Noe requests judicial review of the Administrative Law Judge's decision. [R. 1]. She presents one issue in her appeal. Noe argues that the Administrative Law Judge "committed harmful error by failing to include additional limitations" in her residual functional capacity due to her potential work absenteeism. [R. 13 at pg. 1].

## STANDARD OF REVIEW

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). So, the Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final

decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference. In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

## ANALYSIS

### A

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, if the Administrative Law Judge reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Noe takes issue with the Administrative Law Judge's determination of her residual function capacity, which implicates steps four and five of the analysis.

**B**

In her appeal, Noe asks this Court to review whether the Administrative Law Judge properly considered her potential work absenteeism when determining her residual functional capacity. The Acting Commissioner contends that Noe's appeal "is entirely without merit." [R. 17 at pg. 3]. Consequently, the Acting Commissioner asserts that this Court should affirm on substantial evidence review. [*Id.* at pg. 8].

In Noe's view, it was a mistake for the Administrative Law Judge to find that Noe suffered from several severe conditions while simultaneously declining to "address" in the residual

functional capacity analysis "the fact that [she] would be absent from work multiple times per month" because of those conditions. [R. 13 at 6]. That is the thrust of Noe's appeal.

Noe's argument is three-fold. [*Id.* at pgs. 6–11]. *First*, Noe sets the stage by informing the Court that the neutral vocational expert testified that "anything more than" one absence per month "would eliminate work." [*Id.* at pg. 7] (quoting [R. 6-1 at pg. 126]). *Second*, Noe, pointing to her treatment history, asserts that she "visits different providers four or more times each month for necessary treatment." [*Id.*] And *third*, Noe argues that her "physical and mental impairments would cause her to be absent from work multiple" additional times per month. [*Id.*]. So, whether taken together or separately, it's Noe's position that her medical appointments and medical impairments will cause her to miss work too many times each month to maintain full-time employment. [*Id.*].

The Acting Commissioner argues that Noe's position is unsupported by law. *First*, as a preliminary matter, the Acting Commissioner disputes the premise of Noe's argument: that frequent attendance at medical appointments, alone, is sufficient to foreclose work. [R. 17 at pg. 3] (arguing that "the mere fact that Plaintiff attends frequent medical appointments is not sufficient to show that she would be unable to work") (citing *Swafford v. Comm'r of Soc. Sec.*, No. 1:12-CV-19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013)). Rather, the Acting Commissioner asserts that, to prevail, Noe must demonstrate both (1) that she must frequently attend medical appointments, *and* (2) that she "need[s] . . . treatment during work hours." [*Id.*] (quoting *Swafford*, 2013 WL 1196590, at *1); *see Kellogg v. Saul*, No. 1:20-CV-76, 2021 WL 9816145, at *1 (W.D. Ky. May 7, 2021). And it is the Acting Commissioner's position that Noe didn't offer proof that she needs treatment "during work hours." *Swafford*, 2013 WL 1196590, at *1.

*Second*, the Acting Commissioner argues that the treating provider statements Noe relies on to demonstrate her potential absence from work don't constitute medical opinion evidence at

all, despite appearing within a medical opinion. [*Id.* at pg. 4]. Instead, those statements concern an issue reserved to the Commissioner and, thus, are "inherently neither valuable nor persuasive." [*Id.*] (quoting 20 C.F.R. § 404.1520b(c); 1520b(c)(3)(i)); *see Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010).

Nonetheless, even if the statements do constitute medical opinion evidence, the Acting Commissioner contends that the statements are vague at best and unreliable at worst. For instance, Cynthia McAllister, APRN merely stated that Noe "*may*" be unable to attend work, [R. 17 at pg. 5] (quoting [R. 6-1 at pg. 1308] (emphasis added)), and Chris Vickrey, APRN, only spoke to Noe's demonstrated "fair" reliability in general, not to her propensity to miss—or not miss—work. [*Id.* at pgs. 5–6] (quoting [R. 6-1 at pgs. 1521–28]). What's more, the only statements that assert Noe will have "high absenteeism" at work come from her primary care physician, Dr. John Watts. [*Id.* at pg. 6] (referencing [R. 6-1 at pgs. 1551, 1556]). The Acting Commissioner highlights, however, that most of these statements were made *after* Noe's date last insured,[4] and were addressed (and ultimately discredited as inconsistent with objective medical evidence) by the Administrative Law Judge.[5] *See, e.g.*, [R. 6-1 at pgs. 43–46; 54–55] (noting that Dr. Watts's opinion that Noe would "incur high absenteeism" is "internally inconsistent with his finding that [she] would be 'Good' at maintaining attention and concentration").

C

Noe's primary argument—that her monthly medical appointments foreclose all work—is unavailing. "[E]vidence of frequent medical appointments is not enough." *Swafford*,

---

[4] This is an important qualifier because "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004)
[5] Likewise, the Administrative Law Judge considered and discredited Dr. Watts's 2016 medical opinion in which he averred that Noe would be unable to work during the 2016–2017 school year. [R. 6-1 at pgs. 43–46] (describing Dr. Watts's opinion that Noe couldn't work as "inconsistent" in light of Noe's "localized abnormalities").

2013 WL 119650, at *1. It would be inappropriate for the Administrative Law Judge to draw an inference that frequent medical appointments, alone, necessitate frequent absences from work. In addition to offering evidence of appointment frequency, Noe bore the burden of demonstrating that her appointments will necessarily interfere with work. *See Hodson v. Comm'r of Soc. Sec.*, No. 3:17-cv-96, 2018 WL 3326842, at *4–6 (W.D. Ky. Mar. 1, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 1558106 (W.D. Ky. Mar. 30, 2018). However, Noe didn't offer the Administrative Law Judge any evidence that her appointments would fall during work hours.[6]

Much like the *Hodson* Court, this Court is "sympathetic" to Noe's lived reality. *Hodson*, 2018 WL 3326842, at *6. It is possible, and perhaps likely, that Noe attends multiple appointments monthly. But, also like *Hodson*, here Noe's problem is "two-fold." *Id.* "First and foremost, there is a lack of medical evidence or testimony from medical sources with respect to the appointments that she requires (and the duration and frequency of same) due to [her] impairments." *Id.* And second, multiple courts in this circuit indicate "that a claimant bears the burden of showing that [her] appointments necessarily conflict with a work schedule and cannot be scheduled prior to work, after work, . . . on a non-work day," or even during a lunch break. *Id.* (referencing *Pryor v. Comm'r of Soc. Sec.*, No. 14-cv-13325, 2015 WL 12683977 (E.D. Mich. Aug. 21, 2015), *report and recommendation adopted*, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015); *Bray v. Comm'r of Soc. Sec.*, No. 1:13-cv-40, 2014 WL 4377771 (S.D. Ohio Sept. 3, 2014)); *see also Pryor*, 2015

---

[6] For instance, during her June 3, 2021 hearing with the Administrative Law Judge, Noe testified that she believes she would miss "probably two or three" days of work per week, "or have to leave early" at least two or three days per week. [R. 6-1 at pg. 92]. However, Noe never attributes those absences to medically necessary appointments, nor does she testify that her medical appointments conflict with work. Rather, she attributes her potential absence to pain and social stressors. *See* [*Id.* at pgs. 91–92]. And during her June 25, 2020 hearing with the Administrative Law Judge, Noe testified that she attends "four" medical appointments per month and that her "longest" medical appointment lasts "two hours" "round trip," but she didn't indicate whether the appointments would necessarily conflict with working hours. [*Id.* at pg. 118].

WL 12683977, at *7 ("Pryor has not established any reason to think that he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule. The claimant is tasked with providing evidence in support of his alleged disability.").

Furthermore, as relayed by the Acting Commissioner and discussed briefly above, the Administrative Law Judge did, in fact, consider Dr. Watts's statement that Noe's condition will prevent her from working. *See Trusty v. Colvin*, No. 7:13-CV-94-JMH, 2014 WL 4181066, at *4 (E.D. Ky. Aug. 20, 2014) (noting that a doctor's statement that a claimant "could work no hours per day and would be absent from work more than four days per month" were not "medical opinions, but rather conclusions on the issue reserved for the Commissioner"). However, after thoroughly recounting Dr. Watts's statements and medical opinions, the Administrative Law Judge discredited them as internally inconsistent, as inconsistent with other objective medical evidence in the record, and as a product of Dr. Watts's overreliance on Noe's subjective account of her symptoms. [R. 6-1 at pgs. 41–46; 54–55, 57] ("While his opinions are consistent with the claimant's subjective allegations, his opinions are inconsistent with the objective medical evidence."). Critically, the Administrative Law Judge's decision to discredit Dr. Watts's statements and opinion was supported by substantial evidence.

Simply put, "evidence of frequent medical appointments is not enough." *Swafford*, 2013 WL 119650, at *1. It is also not enough for Noe to simply demonstrate that her appointments are medically necessary, as Noe suggests. [R. 13 at pg. 8] (arguing that "the ALJ did not, for example, review Ms. Noe's treatment history and make a finding that her doctor visits are unnecessary"). Rather, Noe carried the burden of showing that her medically necessary appointments conflict with work. Noe didn't meet that burden.[7] So, remand is inappropriate on this ground.

---

[7] During the June 25, 2020 hearing, Noe's counsel asked the vocational expert whether employers would tolerate four absences per month due to doctor's appointments. [R. 6-1 at pg. 126]. However, Noe's counsel's question posed a

**D**

Noe's secondary argument—that her physical and mental symptoms would prevent her from reliably attending work—is similarly unavailing. Her argument necessarily criticizes the Administrative Law Judge's subjective symptom evaluation; an evaluation which this Court owes "great weight and deference," *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997), because Administrative Law Judges are "in a unique position to observe the claimant and judge [her] subjective complaint." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

SSR 16-3p governs the evaluation of symptoms in Title II and Title XVI disability claims when determining whether a claimant can return to work. SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017). A two-step inquiry guides an Administrative Law Judge's evaluation of a claimant's symptoms. *Id.* at 49,463–64. First, he must determine whether an "underlying medically determinable physical or mental impairment . . . could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at 49,463. Second, he must examine the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* During the second step, the Administrative Law Judge must "consider all the evidence presented," 20 C.F.R. § 404.1529(a), including information about [the claimant's] prior work record, [her] statements about [her] other symptoms, evidence submitted by [her] medical sources, and observations by . . . other persons[.]" *Id.* at § 404.1529(c)(3). Generally, a reviewing court may only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

As a preliminary matter, the Court notes that the Administrative Law Judge found that Noe's underlying impairments could, indeed, be reasonably expected to produce symptoms like

---

hypothetical. Noe never offered proof—not during her hearings before the Administrative Law Judge, and not on appeal—that her particular medical appointments necessarily conflict with work hours.

those alleged. [R. 6-1 at pg. 41] (finding that Noe's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). Neither Noe nor the Acting Commissioner contest this finding, so the Administrative Law Judge's finding at step one of the two-step inquiry is not at issue. Only his finding at step-two is at issue. And, in effect, a challenge to a finding at step two challenges the sufficiency of the evidence relied on by the Administrative Law Judge.

Here, the Administrative Law Judge's determination is supported by substantial evidence. As discussed in the previous section, the Administrative Law Judge relied on the objective medical evidence of record in assessing Noe's residual functional capacity. Likewise, the Administrative Law Judge thoroughly considered the validity of Noe's subjective account of her symptoms against the objective medical evidence of record. [R. 6-1 at pgs. 41–59]. Ultimately, the Administrative Law Judge found Noe's testimony about the "intensity, persistence, and limiting effects of her symptoms" to be "inconsistent" with the objective medical evidence of record. [*Id.* at pg. 41]; *see Coldiron v. Comm'r of Soc. Sec.*, 391 F. App's 453, 443–44 (6th Cir. 2010) (affirming on the ground that the claimant's subjective complaints were disproportionate to the objective medical evidence). Thereafter, the Administrative Law Judge chronicled the objective medical evidence of record that supported his residual functional capacity determination (and subjective symptom evaluation). [R. 6-1 at pgs. 41–59]. Certainly, his findings are supported by substantial evidence of record. Remand is inappropriate on this ground.

## Conclusion

April Noe appealed the Acting Commissioner's final decision finding that she can perform light exertional work. Noe argued that the Administrative Law Judge's findings were not supported by substantial evidence because the Administrative Law Judge failed to consider her potential

excessive absenteeism. But the Administrative Law Judge's residual functional capacity determination is supported by substantial evidence. So, the Acting Commissioner's final decision is AFFIRMED. A separate judgment will follow.

    Signed March 6, 2023.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge